May it please the court and counsel, my name is Wendy Holton. I represent Carl MacDonald, the appellant in this case. The question here is whether guideline section 2D1.1b5 was properly applied here. That section, of course, provides for a two-level enhancement in a defendant's offense level if a drug manufacturing offense involved an unlawful discharge, emission, or release into the environment of a hazardous or toxic substance or the unlawful transportation, treatment, storage, or disposal of a hazardous waste. There is an application note to that section that indicates that one of three statutes must be violated in order for the guideline section to apply. The only one of those statutes that would apply in this case is 42 U.S.C. 6928. And the only references in that statute refer specifically to hazardous waste. The statutes also contain a specific definition of what is a hazardous waste. And that definition is found at 42 U.S.C. 6903 sub 5. That section requires that a substance have the capacity to do harm before it qualifies as a hazardous waste. It says that a combination of a solid waste or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness or pose a substantial presence or potential hazard to human health or the environment when improperly treated, stored, or transported, or disposed of, or otherwise managed. So the gist of the definition of hazardous waste is that there be an ability to cause harm in the configuration that the substance is found in. Would you clarify the one thing that it seemed to me from trying to reconcile these RCRAF statutes with the others is that there was this one option where a listed hazardous waste, that if it's listed as a hazardous waste and then it was disposed of, it would fall within the statute and that you don't make any separate analysis of toxicity or effect. Is that correct? That is not my understanding of the application of the Guidelines section. As I said before, my reading of the Guidelines section and the application note requires a violation of statute, the statute, before it applies. And the only, as I think that the prosecution and I agree in this case, that the only one of those statutes that does apply here would be 6928. And then you've got to go to the definition of hazardous waste. I think that there is perhaps some inartful drafting, but within the context of that inartful drafting, I think we have to go with the plain meaning. We have to follow down from the Guideline to the application note, to the statute, to the definition, in order to determine whether there has been a violation. I have a question following Judge McKeown. In the same vein, it seems as though the statute that you have to violate in order to have a problem has a list of certain substances and chemicals. And if you're on the list, and if we follow your reasoning, and if it's in a toxic, hazardous concentration and it's found, then you would violate the statute. Is that your point? Yes, I mean, for example. I'll let you explain, but I want to go one step further. But you have to find, according to your theory, you'd have to find something on the list in some trace amount in the site, or else you wouldn't have a violation anyway, right? Correct. Now, do we know in this record that there was anything on the list that was found in any concentration on the site? I think there was three park sites. Correct. And from your point of view, was there anything found in any concentration that's on the list in any of those sites? There were some substances that indicated the disposal of certain chemicals that could be traced back to the list. It's how I read the record in this case. Not the substance, but those things that were found could trace back and say, yep, maybe something on this list was dumped here. That's correct. Is that the government's best case? The government's best case is that something that is on the list was dumped, and the fact that it was dumped in and of itself qualifies it for the enhancement under this statute. I think that both of the experts testified that the soils itself that were removed, which were tested and removed here, did not constitute a hazardous waste because there was not sufficient concentration of any substance. Actually put them in a landfill, right? That's correct. But just to try to figure out where you agree and disagree with the government, not that I'm making you agree with them on anything, but there's these three substances, the muriatic acid, the xylene, which comes from heat, and there's one other one that you can't remember. I believe it's iodine. Iodine or iodine. Iodine, yeah. So there's these three substances, and we have evidence that they were disposed of at the site. And if we take your view, they would need to be at the time discovered, creating a hazardous condition by virtue of either of concentration. Is that correct? And I wouldn't go so far as to say that it had to be at the time discovered. I think that the government has the burden of showing that at some point it constituted a hazardous waste. Okay. So the difference is that we do know these three chemicals were there and present, so they had been disposed of. And if we take your theory, we need to have a toxicity threshold. And if we take the government's theory, just being on the list is enough. Is that basically what joins the argument?  All right. And I don't think that this is an impossible burden for the government, to show that at some point there was either the ground either qualified for or potentially qualified for definition as a hazardous waste. There was testimony by both of the experts in this case that there was a test called a T-clip test, that it looked to me from the record could have determined that. And I don't know the science of this, but I do do a lot of work in the DUI area, and we have something called retrograde extrapolation, where we can take blood alcohol level at the time of arrest and work that back to the time of driving. And like I say, I'm not personally aware of the science in this area, but it does seem to me that that would not be an impossible standard for the government to prove that at some point along the way or at the time when it was discovered that there was actually a hazardous waste here. Where in the law do you find that they have to do that standard though? I find it in the definition of hazardous waste, that requires that something have the potential of doing harm. If there are no further questions at this time, I'll reserve my remaining time for rebuttal. Good morning. May it please the court, counsel. My name is Bernie Hughley. I handle the prosecution in this case and the briefing. And now the argument. Judge McKeown, I think you have precisely defined the two sides to this issue. The United States believes that from a plain reading of subsection D in 6928, which I'll quote, it's unlawful for anyone to knowingly treat, store, or dispose of a hazardous waste. There is nothing in that statute that talks about the degree of toxicity. It talks about disposal of hazardous waste. Now let me back up. Well, but counsel ties that in very nicely by then going to the definition of hazardous waste, which is a substance, a concentration, physical, chemical, infectious characteristics, may cause or significantly contribute to increased morality, serious irreversible incapacity, illness, etc. So if you have what the experts found, something that was so degraded or whatever, a toxicity that they could put it into a landfill, how could you ever meet the standard of the statute that this would cause illness? It's not a hazardous waste at that point when you found it, right? It was not a hazardous waste by definition in the storage in the soil, which I think goes to a different part of the statute which talks about storage as opposed to disposal. I think what the defense here is arguing is there is no violation of the storage provision because we can't prove that the hazardous waste is in the toxicity level that they want. I guess what I'm trying to figure out is it talks about hazardous waste identified or listed. Right? Let me respond directly to that in this manner. If you look at subsection 5, which they referred to, let me just challenge you for a minute. You tell me what we would define as a hazardous waste other than generically something that's bad, that's unhealthy. You can't do it. You can read that 100 times and you'll think, what in the world is a hazardous waste? Without a list of the potential hazardous wastes, you could never meet a standard because you would be dealing with something you couldn't even identify or understand. Let me further answer the question in terms of the statute. You can't read subsection 5 alone. If you look at the criminal section that we have to prove by a preponderance was violated, it talks about a disposal of a hazardous waste under this subtitle 42 U.S.C. subsection 6221 et sec. It doesn't hammer in on subsection 5 like the defense would have you do. Rather, you have to read the entire statute. Now, let me make reference to particular points that I think you should look at. Look at 1621A, and it basically talks about the criteria for identifying hazardous wastes. It doesn't list them there, but it gives you a criteria. Then go to the next section, 6921B, and the statute mandates what you're talking about, Judge McKeown, is a listing of hazardous wastes. Then subsection 5 is really a corollary, as I see it, to 1621 because it generically sets forth a standard. In other words, the listing of chemicals has to be of such a nature that it can cause health and damage the environment. Basically, that's what the two subsections talk about. There is an undisputed fact here that the things that are listed, the list was never challenged, and we can't challenge it here. We must accept as proven that listed chemicals were dumped or their containers found, which equates to disposal. Are we talking then about two different standards? Because I hear what you're saying, but are we talking about if you go to the criminal statute and you dump hazardous materials and they cause illness, now you've committed a crime in and of itself. If you dump it, right. Yeah, it's a crime in itself. In the sentencing guidelines, it talks about unlawful discharge, emission, or release to the environment of a hazard or toxic substance. So you're saying if we can identify that it is a hazardous substance, not that it's a criminal violation, then it violates the statute? Is that what the guidelines, is that what you're trying to say? What I'm saying is if you find a listed chemical that was dumped, it equates to a violation, so your issues or your question merges into one. Well, let's stop there just a second. Let's assume we take a list of substance, heat. Okay. And they dilute it to the point where you can identify that it's there, but it's not of a toxic nature. Someone said no problem, put it in the landfill. And you go to the site and you find it at the time that you're there, and you equate it back to the time. Somebody sees it two seconds after he dumps it, and they check it, and it's still diluted. Now we have a violation of the sentencing. Can you use the sentencing guidelines under those circumstances? Yes. Can you get a conviction under the criminal statute in that sense? Under the disposal, I think yes. Even though it's not of a hazardous nature, it won't hurt anybody. You put it in the landfill. It's there. They can test it. But the parts per million are so low. They know it's there, but that's all. They say just put it in the landfill, walk on it, do whatever, it doesn't matter. Your question operates off the premise that the statute requires a toxicity level. I don't think it does, and that's my argument. You simply have to dispose it, whether it's diluted or whether it is pure and in 100% potency. If you dispose of a listed chemical, that's a violation. And because it's listed, because it's listed as a hazardous substance, and so long as it's listed, and if you find the trace, that's it. That's our position, yes. I mean, in a way, that sounds absurd. In other words, except that there is a statute, 6921A, which basically says that the EPA is supposed to figure out what are hazardous wastes, and part of that includes taking into account toxicity, and then you end up with the list. And whatever the list is, then it's within the meaning of 69035. That's exactly right. In a way, when I first read this, I thought, well, this can't be. If water were a toxic substance, then you drop it in, you'd be criminally liable. But if they list the toxic substance, it seems like the hazard may be with the administrative procedure for listing of toxic substances. I think that's exactly right. It's not for you or I as lawyers to say that if you dilute something, it's probably no longer toxic. What I think the statute says is define it up front. If it's a bad substance, I use the word bad generically to incorporate in all our criteria and definition of hazardous waste, but if it's bad up front by definition, then I would answer your question, Judge McKeown, and your question, Judge Brunetti, that if it's defined bad and put on a list up front, it cannot be disposed of in any way, and I don't think the statute then says, oh, but only if it's only self-toxic. That was sort of like I was trying to explore in the beginning. We're under a base offense level analysis and not under trying to find a crime. What they're trying to say is did you dump something on the list? That's your case. It's not we're going to go over here and try to go through the due process and all of the criminal elements of trying to prove a crime, whether it has to be substantive, toxic, or whatever. We're just saying is it there? It's enough to deal with the base number. That's all you're saying. That's correct, Your Honor. That's correct. For this argument, yes, but I'm not so sure it is also sufficient to establish a criminal record. We don't have to go there. No, we don't. No, we don't. No, we don't. So if it's listed, bad, and you dump it, the two-point enhancement applies regardless of the toxicity level. Let me also say one thing, that if you are going to judge this by the toxicity level later found, you have to account for dissipation over time that may occur and really not give a true factual understanding, and you would make it impossible for the government to prove it unless they were right on top of the crime, and I don't think the guidelines are there. Did it come up in another circuit before this interpretation? If it did, I cannot find any law. I ran it once more before. We didn't find any, but sometimes you can find things we can't. No, and I can tell you that my efforts included time, a briefing, and as recently as last week, and if it's there, I missed it, and I just don't think that we have an interpretation, so you may be breaking new ground here, and I would, of course, ask you to adopt the government's view. Thank you. Thank you. Ms. Holtman. Thank you. The list defines what substances can qualify as a hazardous waste if found in toxic or hazardous levels. It's the difference between one drop of heat in a bucket full of water versus a bucket full of heat with one drop of water. One probably is not toxic or hazardous waste. The other one is. It's the potential, and the government has just asserted that this would be an impossible burden for them. As I indicated before, there was testimony from both of the experts in this case that there was a T-clip test. As I read their testimony, it did seem to me that that T-clip test could back up and potentially tell what levels possibly were. Here there is just no evidence that at any point after the disposal of any substance on these sites, there was a potential of harm and that there was anything that would qualify as a hazardous waste. If the standard is one drop, and we're going to start under these statutes, start prosecuting people for dropping heat on the ground, not under the methamphetamine statute, of course, but under the environmental statutes, spilling heat on the ground at a gas station when they're putting it in. I think you used the wrong word. I mean, with all due respect, you said prosecuting people. But we're not prosecuting him. All we're doing is trying to judge his base level for sentencing purposes. And that's what I was trying to draw on. Aren't we looking at two different things? One is trying to establish a crime and do punishment and further sentencing. Now we've gone past the crime. We're trying to sentence the person and say, well, we're going to take these factors into consideration in adjusting this level. And we do all kinds of things in the sentencing guidelines, such as take charges that are within 15 years and enhance and all that stuff. Aren't we just adjusting based upon facts, not on toxicity, that would go to the crime element? Not unless you want to rewrite those statutes for the purposes of the 6928, for the purposes of the imposition of the guideline, because the application note specifically refers to a violation of that statute. And so you would have to rewrite the statute. It is the defense position, of course, that the government failed to prove that there was a hazardous waste in this case, and we would ask you to remand the case for resentencing. Thank you. The case of the United States v. McDonald is submitted.
judges: B Fletcher, Brunetti, McKeown